UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MARTIN LUTHER BASKERVILLE,

        Plaintiff,

v.                    07-CV-630 JTC

REGISTERED NURSE K. TREMLETT,
PHYSICIAN ASSISTANT ROBERT MACOMBER,
and J. PETER GREGOIRE, M.D.,

        Defendants.

---

APPEARANCES:    MARTIN LUTHER BASKERVILLE, Plaintiff *Pro Se.*

           ERIC T. SCHNEIDERMAN, ATTORNEY GENERAL OF THE STATE OF NEW YORK, (GEORGE MICHAEL ZIMMERMANN, ASSISTANT ATTORNEY GENERAL, OF COUNSEL), Buffalo, New York, Attorneys for Defendants.

This case has been transferred to the undersigned for all further proceedings.

Plaintiff, Martin Luther Baskerville, proceeding *pro se*, brought this action for money damages pursuant to 42 U.S.C. § 1983, based on alleged unconstitutional conditions of his confinement as an inmate in the care and custody of the New York State Department of Corrections and Community Supervision ("DOCCS")[1] at Five Points Correctional Facility ("Five Points") in Romulus, New York.  Defendants Kristin E. Tremlett, Robert L. Macomber, and J. Peter Gregoire have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (Items 44 & 65) seeking dismissal of the complaint in its entirety.

---

[1] By enactment of Chapter 62 of the Laws of 2011, the New York State Department of Correctional Services ("DOCS") was merged with the New York State Division of Parole to create the New York State Department of Corrections and Community Supervision ("DOCCS").

For the reasons that follow, defendants' motions are granted.

## **BACKGROUND**

Plaintiff has been in the care and custody of DOCCS since approximately January 1991. *See* Item 48 (Zimmermann Decl.), Exh. C (Plaintiff's Dep. Tr.), pp. 7-8. He was transferred from Mid-State Correctional Facility ("Mid-State") to Five Points on December 30, 2005. At that time, defendant Gregoire was the Facility Heath Services Director (*see* Item 68, Gregoire Decl.), defendant Macomber was a Physician Assistant ("PA") (*see* Item 50, Macomber Decl.), and defendant Tremlett was a Registered Nurse ("RN") (*see* Item 49, Tremlett Decl.) at Five Points. Five Points is a "double bunk" facility, at which some inmates are assigned to double occupancy cells with upper and lower bunk beds. Inmates' requests for assignment to the often-preferred lower bunk are determined by the facility's medical staff pursuant to DOCCS' Division of Health Care Services Policy No. 1.49.[2]

Upon his arrival at Five Points, plaintiff was taken to the infirmary for medical assessment due to his HIV positive status. He was interviewed and examined by Nurse Tremlett. Item 47 (Defendants' Statement of Undisputed Facts), ¶ 14; *see also* Item 49,

---

[2]Policy No. 1.49 provides that inmates requesting a lower bunk permit must meet the following the criteria:

- On medication for a seizure disorder
- Diabetes/insulin dependent
- Age over 60 years
- Weight over 300 pounds
- Documented back problems through physician review and approval (e.g., radiologic or surgical)
- Permanent physical disability (e.g., amputee, rheumatoid arthritis)
- Diagnosis of sleep apnea
...
- [Temporary permit allowed for] Acute injury or serious medical conditions (i.e., fractures, recent MI, advanced arthritis).

Item 48, Exh. C.

¶¶ 7-11. Plaintiff claims that he advised Nurse Tremlett of his history of back problems and requested assignment to a lower bunk. Item 55 (Amended Compl.), ¶ 10. However, Nurse Tremlett completed DOCCS Form 3117, "Screening and Physical Assessment for Placement in a Double Cell," without indicating "any known medical indications requiring him to be placed in a bottom bunk bed …." Item 48, Exh. A, Bates No. 1854.[3]

Plaintiff remained in the Five Points infirmary for two or three days following admission. Item 47, ¶ 42. Plaintiff's Ambulatory Medical Record ("AHR") reflects that Nurse Tremlett saw him again on January 1, 2006 (the day after his transfer), at which time she noted her concern that plaintiff's property had not yet arrived from Mid-State, leaving him without his needed medications. Bates No. 2377. Nurse Tremlett called PA Macomber, the facility's "special[ist] in the treatment of HIV positive inmates …," Item 50, ¶ 8, who ordered replacement medications from stock. *See id.* at ¶¶ 24-26; Item 49, ¶¶ 24-28.

Plaintiff's AHR further reflects that, upon review of plaintiff's chart on January 4, 2006, PA Macomber placed plaintiff on "call out" for evaluation of his medical status, which took place on February 2, 2006. Bates No. 2378, 2381. PA Macomber reported on DOCCS Form 3113, "HIV Interim Visit Sheet," that plaintiff was stable on antiretroviral therapy ("ART"), with multiple other issues not related to his HIV status, including complaints of back problems. Bates No. 2381. Plaintiff requested a back brace, but PA Macomber noted "no consult to indicate need," and that the results of two lumbar spine x-

---

[3]Unless otherwise noted, all subsequent references in the text preceded by "Bates No." are to the numbered pages of the medical records submitted as Exhibit A to the Declaration of George Michael Zimmermann (Item 48).

rays were within normal limits.  *Id.*  The medical records reflect no indication that plaintiff made a specific request for a lower bunk permit until February 15, 2006, when PA Macomber met with plaintiff in his cell.  Bates No. 2382.  Following this visit, PA Macomber consulted with Dr. Gregoire and obtained approval for an MRI to document plaintiff's need for lower bunk placement.  Item 50, ¶ 44.

The MRI was performed on February 27, 2006.  *See* Item 49, Exh. A, pp. 2-3.  On that same day, plaintiff was also seen by Five Points' medical staff for an emergency sick call, during which he demanded a lower bunk permit.  The AHR entry for that date indicates that medical personnel on duty informed plaintiff that emergency sick call was not for making a lower bunk permit request, to which plaintiff responded, "I'm suing you all."  Bates No. 2382.  The AHR also indicates that plaintiff had a 6:00 a.m. sick call on February 28, 2006, at which time he reported that he had fallen from his top bunk on the previous day.  He told the RN on duty that he filled out an injury report, but the RN noted "no report of injury in A Block log book per security."  *Id.*

On March 1, 2006, PA Macomber received the report of plaintiff's MRI, which indicated:

> There is discogenic disease, spondylosis and diffuse posterior disc bulges from L2-L3 through L5-S1.
> …
> The patient has undergone a prior left hemilaminectomy at L4-L5 and there is abnormal soft tissue about the left ventral aspect of the thecal sac and extending into the left anterior recess, compromising the left L5 and L4 nerve roots.  This probably represents a residual or recurrent HNP or epidural fibrosis. … There is also a moderate degree of central canal spinal stenosis at this level.

Bates No. 1439-40.  On March 8, 2006, PA Macomber performed a physical examination of plaintiff.  He noted that plaintiff was status post spinal fusion, with radiculopathy and

decreased strength in his left leg. He discussed the MRI and recent lab results with plaintiff, and ordered follow-up lab work; indicated that plaintiff was adhering to ART, and that referral to neurology would be appropriate; and recommended approval of plaintiff's request for a lower bunk permit. Bates No. 2383-84.

The AHR further reflects that plaintiff was seen at Upstate Medical University on June 28, 2006, for a neurological consultation by Peter Kim, M.D. Bates No. 2390-91. Plaintiff reported his history of spinal surgery, and that he had been doing well until he fell from his upper bunk in February. His chief complaint was severe left lower extremity pain. Upon review of the MRI, Dr. Kim recommended left L4-5 microdiscectomy, which was performed on September 1, 2006. *See* Item 1, Ex. I. At a follow-up outpatient visit on October 4, 2006, plaintiff was "doing quite well postoperatively." Bates No. 2389.

Plaintiff filed this action *pro se* on September 21, 2007. Item 1. Following retention of counsel,[4] and based on facts revealed during the parties' depositions, the court granted plaintiff leave to amend the complaint in order to add Dr. Gregoire as a defendant. *See* Item 28. In the amended complaint, plaintiff alleges that Nurse Tremlett's failure to report and document plaintiff's back problems on his arrival at Five Points on December 30, 2005, and PA Macomber's and Dr. Gregoire's failure to approve his request for a lower bunk permit until March 8, 2006, resulted in his fall from his top bunk and caused further injury to his back. Item 55, ¶ 21. Plaintiff claims that defendants' conduct amounts to deliberate indifference to his serious medical needs in violation of the rights protected by the Eighth

---

[4] The court subsequently granted counsel's motion to withdraw from his representation of plaintiff based upon counsel's certification that he had been suspended from the practice of law in the State of New York, and upon an order from the Chief Judge of this court striking counsel's name from the roll of members of the bar of the Western District of New York. *See* Item 32.

and Fourteenth Amendments to the United States Constitution, subjecting defendants to liability for money damages under 42 U.S.C. § 1983. *Id.* at ¶¶ 26-39.

Defendants now seek summary judgment dismissing the amended complaint as a matter of law. Defendants contend that the facts developed during discovery provide no basis for a reasonable jury to find in plaintiff's favor on his claim that defendants were deliberately indifferent to his serious medical needs in violation of his federal constitutional rights.

## DISCUSSION

**I.  Summary Judgment**

Rule 56 provides that, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although the language of this Rule has been amended in recent years, the well-settled standards for considering a motion for summary judgment remain unchanged. *See, e.g., Faulkner v. Arista Records LLC*, 797 F. Supp. 2d 299, 311 n. 7 (S.D.N.Y. 2011). Under those standards, the party seeking summary judgment bears the initial burden of establishing that no genuine issue of material fact exists. *Rockland Exposition, Inc. v. Great American Assur. Co.*, 746 F. Supp. 2d 528, 532 (S.D.N.Y. 2010), *aff'd*, 445 F. App'x 387 (2d Cir. 2011). A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law …." *Id.*

Once the court determines that the moving party has met its burden, the burden shifts to the opposing party to "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). The nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars showing that a trial is needed …." *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotation marks and citation omitted), *quoted in Kaminski v. Anderson*, 792 F. Supp. 2d 657, 662 (W.D.N.Y. 2011). In considering whether these respective burdens have been met, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (internal quotation marks and citation omitted).

The court recognizes its duty to "extend extra consideration" to *pro se* plaintiffs and that "*pro se* parties are to be given special latitude on summary judgment motions." *Bennett v. Goord*, 2006 WL 2794421, at *3 (W.D.N.Y. Aug. 1, 2006), *aff'd*, 2008 WL 5083122 (2d Cir. 2008) (quoting *Salahuddin v. Coughlin*, 999 F. Supp. 526, 535 (S.D.N.Y. 1998)); *see also McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (*pro se* party's pleadings should be read liberally and interpreted "to raise the strongest arguments that they suggest"). "Nevertheless, proceeding *pro se* does not otherwise relieve a litigant from the usual requirements of summary judgment, and a *pro se* party's 'bald assertion,'

unsupported by evidence, is not sufficient to overcome a motion for summary judgment."

*Cole v. Artuz*, 1999 WL 983876, at *3 (S.D.N.Y. October 28, 1999) (citing cases).

## II. Defendants' Motion: Section 1983 Action for Deliberate Indifference to Serious Medical Needs in Violation of the Eighth Amendment

Plaintiff brings his claims under section 1983, which provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ….

42 U.S.C. § 1983. "In order to maintain a section 1983 action, two essential elements must be present: (1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994); *see also Kasiem v. Guzman*, 2011 WL 4352387, at *3 (W.D.N.Y. September 16, 2011).

"The Eighth Amendment's prohibition against cruel and unusual punishment has been construed to include the denial of adequate medical care for an inmate's serious medical needs." *Woods v. Goord*, 2002 WL 31296325, *2 (S.D.N.Y. October 10, 2002); *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The care provided to prisoners to treat their injuries or illnesses must meet minimum medical standards of adequacy and be reasonably intended to satisfy their medical needs. To show that prison officials' attention to an inmate's medical condition

was so inadequate as to amount to "cruel or unusual punishment" prohibited by the Eighth Amendment, the inmate must prove that the prison officials' actions or omissions amounted to "deliberate indifference to serious medical needs." *Estelle*, 429 at 106; *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000).

Inmates' claims for damages under section 1983 based on deliberate indifference to a serious medical need are subjected to a two-pronged test consisting of objective and subjective elements. First, the court must determine, with regard to objective criteria, whether plaintiff's condition is such that the alleged deprivation of medical assistance is "sufficiently serious." *Woods*, 2002 WL 31296325, at *3 (citing *Hathaway v. Coughlin*, 37 F.3d 63, 66–67 (2d Cir. 1994) (*Hathaway* I); *see also Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Second, the court must consider whether the official "knew that an inmate faced a substantial risk of serious harm, and disregarded that risk by failing to take reasonable measures to abate it." *Woods*, 2002 WL 31296325 at *3 (internal citations and alterations omitted); *see also Harrison*, 219 F.3d at 137.

A serious medical need is one of some urgency or one which, if ignored, may produce death, degeneration or extreme pain. *Hathaway,* 37 F.3d at 66. As the Second Circuit has explained, there is no "settled, precise metric" to guide the court in its estimation of the seriousness of a prisoner's medical condition. *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003). Rather, the court's inquiry into the objective component of an Eighth Amendment claim must be tailored to the specific facts of each case, *see Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003), guided by the following non-exhaustive list of factors: (1) whether a reasonable doctor or patient would perceive the medical need in

question as "important and worthy of comment or treatment;" (2) whether the medical condition significantly affects daily activities; and (3) "the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

Upon review of the evidence submitted in connection with defendants' summary judgment motion, the court finds that the record in this case provides a basis for a reasonable jury to conclude that plaintiff's medical condition was sufficiently serious to establish the objective component of his Eighth Amendment claim. However, in order to avoid summary judgment, plaintiff must also establish the subjective component by showing that each of the prison officials charged with deliberate indifference acted "with a sufficiently culpable state of mind …," *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (citing *Wilson*, 501 U.S. at 298), which is the "equivalent of criminal recklessness." *Victor v. Milicevic*, 361 F. App'x 212, 214 (2d Cir. 2010) (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (*Hathaway* II)).

As explained at further length by the Supreme Court, because "deliberate indifference is a stringent standard of fault," *Bd. of the County Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 410 (1997), satisfaction of the subjective prong requires a showing of conduct on the part of each defendant that "entails something more than mere negligence," but "something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. Thus, a prison official acts with deliberate indifference to an inmate's health or safety only if he "knows of and disregards an excessive risk to inmate health or safety; the official must both

be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

A difference of opinion between a prison inmate and medical staff regarding the level of care required does not, as a matter of law, constitute deliberate indifference. *Chance*, 143 F.3d at 703; *Muhammad v. Reeves*, 2012 WL 5617113, at *7 (W.D.N.Y. Nov. 15, 2012). Indeed, the courts have repeatedly recognized that prison medical staff must be accorded wide discretion in treating inmates in their care, and "section 1983 is not designed to permit federal courts to interfere in the ordinary medical practices of state prisons." *Sonds v. St. Barnabas Hosp. Corr. Health Serv.*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001) (citing *Church v. Hegstrom*, 416 F.2d 449, 450-51 (2d Cir. 1969) (section 1983 "does not authorize federal courts to interfere in the ordinary medical practices or other matters of internal discipline of state prisons.")). "So strong is this view that determinations of medical providers concerning the care and safety of patients are given a 'presumption of correctness.' " *Sonds*, 151 F. Supp. 2d at 312 (quoting *Perez v. Cnty. of Westchester*, 83 F. Supp. 2d 435, 440 (S.D.N.Y.), *aff'd*, 242 F.3d 367 (2d Cir. (2000)).

Applying this presumption under circumstances similar to those presented here, several courts (including courts within this district) have held that prison medical staff's negligent failure to grant an inmate's request to be assigned to a lower bunk "does not satisfy the subjective element of the legal standard governing claims of deliberate indifference to a serious medical need under the Eighth Amendment." *Felix–Torres v. Graham*, 687 F. Supp. 2d 38, 53 (N.D.N.Y. 2009) (listing cases); *see also Quezada v. Poole*, 2011 WL 4368450, at *3-*4 (W.D.N.Y. Sept. 19, 2011) (Skretny, C.J.) (denying Five

Points inmate's claim that denial of lower bunk permit amounted to deliberate indifference, finding no evidence that facility physician "acted on the basis of anything other than his medical opinion."); *Goodson v. Willard Drug Treatment Campus*, 615 F. Supp. 2d 100, 101-02 (W.D.N.Y. 2009) (Larimer, J.) ("While I am not stating that an inmate could never make out an Eighth Amendment claim based on his being assigned to an upper rather than a lower bunk, plaintiff has not presented sufficient evidence to support such a claim in this case. At most, he has simply shown that there was a difference of opinion between him and defendants in that regard.").

Similarly, in this case plaintiff alleges that Nurse Tremlett, PA Macomber, and Dr. Gregoire each failed to recommend or authorize granting plaintiff's request for assignment to a lower bunk, despite access to plaintiff's medical records documenting his history of back problems and use of medications which placed him at substantial risk of harm in an upper bunk placement. As indicated by the following discussion, the court finds that the evidence in the record is insufficient as a matter of law for a reasonable jury to find that, in considering plaintiff's request, any of the defendants acted with "criminal recklessness," "deliberate indifference," or on the basis of anything other than professional opinion reached upon review of the available medical records, as required under the institutional rules and regulations.

### A. Nurse Tremlett

The undisputed facts set forth in the record developed during discovery in this case reveals that Nurse Tremlett was working the 3 p.m-11 p.m. shift in the Five Points infirmary when plaintiff arrived at approximately 7:30 p.m. on Friday, December 30, 2005 for his

medical assessment upon his transfer from Mid-State. As the nurse on duty, Ms. Tremlett reviewed plaintiff's medical records, noting his positive HIV and Hepatitis C status. She also noted plaintiff's need for the medications in his personal property, which had not yet been logged in at Five Points. *See* Bates No. 2377.

Nurse Tremlett's preliminary review of plaintiff's extensive medical file and her observations of his overall physical condition indicated the presence of no qualifying medical concerns, such as seizure disorder, obesity, or advanced age, which would have authorized her to immediately assign plaintiff to a lower bunk or single occupancy cell without physician review and approval as outlined in Health Services Policy No. 1.49. Indeed, plaintiff appeared healthy, was walking and moving well, and reported no significant pain. The AHR reflected that his request for lower bunk assignment at Mid-State had been denied for lack of supporting documentation (*see* Bates No. 2376), and he had received no recent treatment for back issues, as confirmed by a report of x-rays taken in April 2003 showing his lumbar spine within normal limits following spinal fusion surgery in the late 1990's. Based on this preliminary assessment, Nurse Tremlett completed Form 3117 indicating that plaintiff presented with no permanent disabilities or pre-existing medical conditions that would have placed him at risk of injury in a double cell, upper bunk assignment. *See* Item 49, ¶¶ 15-21.

The record also reveals that when Nurse Tremlett returned to work on January 1, 2006, plaintiff was still housed in the infirmary. She noted in the AHR that plaintiff's property had yet to be logged in, and he had not yet received his medications. She immediately called the facility's HIV specialist, PA Macomber, who authorized delivery of appropriate medications from stock. *See* Bates No. 2377; *see also* Item 49, ¶¶ 22-27.

**B.     PA Macomber**

PA Macomber first became aware of plaintiff's presence at Five Points on January 1, 2006, when he received the call from Nurse Tremlett informing him that plaintiff was HIV positive, and that his prescribed medications had not yet arrived from the transferring facility. PA Macomber directed Nurse Tremlett to give plaintiff appropriate substitute medications from available stock. Upon his return to work at the infirmary on January 4, 2006, PA Macomber signed off on this order, reviewed plaintiff's chart, and placed him on call out for evaluation of his HIV status. Bates 2377-78.

As discussed above, the evaluation took place on February 2, 2006, and the results were reported on Form 3113 (Bates No. 2381). PA Macomber noted that plaintiff appeared to be stable on ART, but had multiple issues unrelated to HIV status including skin lesions, an unfilled order for soft sole boots, and a request for a back brace. The PA noted that there was "no consult to indicate need" for a brace, and that two recent L5 spine x-rays showed results within normal limits. *Id.* The PA also reviewed and renewed plaintiff's medication order, ordered blood work, and scheduled a follow-up visit. There is no indication on this report that any discussion was had during this visit regarding plaintiff's serious medical need for a lower bunk permit.

Indeed, as discussed above, there is no written notation in plaintiff's medical records to indicate that plaintiff made a specific request for lower bunk placement at Five Points prior to February 15, 2006, when PA Macomber saw plaintiff following a cell fight with another inmate earlier that week. Bates No. 2382. PA Macomber indicated that he would request an MRI to document the need for lower bunk placement. *Id.* He subsequently

obtained approval from Dr. Gregoire, and the MRI was scheduled for February 27. Macomber received and reviewed the MRI report on March 1, 2006, and performed a two-year physical examination of plaintiff on March 8, 2006, following which he recommended issuance of a lower bunk permit. Bates No. 2383; *see also* Item 50, ¶¶ 39-54.

### C. Dr. Gregoire

As the above recitation of the medical evidence in the record suggests, Dr. Gregoire's direct personal involvement in the medical care rendered to plaintiff during the relevant period of his incarceration at Five Points was minimal, limited to the approval of PA Macomber's recommendations for the MRI and the issuance of the lower bunk permit. In his declaration submitted in support of summary judgment, Dr. Gregoire states that, as Facility Health Services Director, it was his responsibility to oversee and approve the medical treatment provided to inmates at Five Points by the PAs, nurses, and other medical professionals working there. Item 68, ¶ 7. Although Dr. Gregoire states that he does not specifically recall the events pertaining to his authorization of plaintiff's request for lower bunk placement, his review of plaintiff's medical records and PA Macomber's supporting declaration indicates to him that such a procedure would comport with "customary practice," and that "an MRI was warranted" under the circumstances. Item 68, ¶ 47. Dr. Gregoire further states his opinion that, based on his review of the medical record, the overall treatment received by plaintiff during the period of his incarceration at Five Points relevant to this matter "was consistent with prevailing standards of medical care" (*id.* at ¶ 57), and that "PA Macomber addressed all of the plaintiff's medical needs, including his complaints of back pain, in a deliberate and appropriate manner." *Id.* at ¶ 58.

This discussion of the undisputed facts in the record pertaining to each individual defendant's conduct toward plaintiff reveals that the medical care and treatment plaintiff received at Five Points was based on reasoned professional opinion reached upon review of the available medical records, as required under the institutional rules and regulations. In line with the reasoning of the case law set forth above, defendants' opinions regarding the appropriate level of medical care to be administered under the circumstances are entitled to a presumption of correctness, and plaintiff's disagreement with medical staff cannot, as a matter of law, constitute sufficient proof to overcome the presumption. At best, the allegations in plaintiff's complaint, liberally construed, amount to a claim that defendants were negligent in failing to grant plaintiff's request for assignment to a lower bunk – a claim which, under established local precedent, "does not satisfy the subjective element of the legal standard governing claims of deliberate indifference to a serious medical need under the Eighth Amendment." *Felix–Torres*, 687 F. Supp. 2d at 53, *quoted in Quezada*, 2011 WL 4368450, at *4.

Based on this undisputed evidence, and drawing all reasonable inferences in plaintiff's favor, the court finds that no rational juror could conclude that any of the defendants named in this action provided plaintiff with medical treatment which fell below the minimum medical standards of adequacy required under the circumstances. Accordingly, no reasonable jury could find in plaintiff's favor on his claim that defendants should be held liable for money damages under 42 U.S.C. § 1983 as a result of deliberate indifference to plaintiff's serious medical needs in violation of the Eighth and Fourteenth

Amendments to the U.S. Constitution, and defendants are entitled to summary judgment in their favor as a matter of law.

## **CONCLUSION**

For the foregoing reasons, defendants' motions for summary judgment (Items 44 & 65) are granted, and the complaint is dismissed in its entirety with prejudice.

The Clerk of the Court is directed to enter judgment in favor of defendants.

The court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

So ordered.

    \s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated: 1/22/2012
p:\pending\2007\07-630.dec17.2012